E-FILED
Monday, 22 April, 2013  11:47:52 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| FALYN BRUCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 12-cv-3198 |
| | ) | |
| DEREK L. GUERNSEY, TROY M. | ) | |
| SWEENEY, JUSTIN HARRIS, | ) | |
| SANGAMON COUNTY, ILLINOIS, | ) | |
| and ROCHESTER POLICE | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter is before the Court on Defendants' 12(b)(6) Motions to Dismiss (d/e 13, 15).  Defendants' Motions to Dismiss Count I against Rochester Police Officer Justin Harris, Count II against Sangamon County Deputy Derek L. Guernsey, and Count III against Sangamon County Deputy Troy M. Sweeney are GRANTED because Plaintiff has failed to plead the factual content to permit a plausible inference that Officer Harris, Deputy Guernsey, or Deputy Sweeney unreasonably

seized Plaintiff.  Defendants' Motions to Dismiss Plaintiff's claims against Sangamon County (Count V) and the Rochester Police Department (Count VI) are also GRANTED because Plaintiff has not adequately alleged that Sangamon County or the Rochester Police Department were deliberately indifferent to a need to train employees in order to avoid a deprivation of constitutional rights.  Finally, Plaintiff agrees to the dismissal of her due process claim against Deputy Guernsey (Count IV).  Plaintiff will be given an opportunity to file an amended complaint.

## I.    FACTUAL BACKGROUND

When considering a motion to dismiss, all well-pleaded factual allegations are accepted as true and all reasonable inferences are construed in the plaintiff's favor.  Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted).  The well-pleaded factual allegations in this case are as follows.

On September 5, 2011, Plaintiff Falyn Bruce, then age 17, was talking to her former boyfriend, a minor, B.S., at his home in Riverton,

Illinois.  The two began to argue.  Plaintiff tried to leave, but B.S. attempted to physically prevent Plaintiff from doing so.  Plaintiff was eventually able to leave.

After leaving B.S.'s home, Plaintiff contacted a friend, D.F., a minor, who picked Plaintiff up and took Plaintiff to D.F.'s home in Rochester, Illinois.  The two arrived at D.F.'s home at approximately 11:50 p.m. on September 5, 2011.

At about 8:00 a.m. on September 6, 2011, Plaintiff talked with her father and told him that she was with D.F.  She also told her father that she was fine but did not feel like going to school.  Plaintiff's father, her custodial guardian, said he understood and that he would contact the school to let them know.

Later on the morning of September 6, 2011, B.S. supposedly told Plaintiff's friends that Plaintiff had attempted to kill herself the night before at B.S.'s home.  Plaintiff refutes that she ever attempted to kill or harm herself.

Plaintiff's friends spoke with the guidance counselor at Riverton

High School about what B.S. had told them.  At about 8:45 a.m. on
September 6, 2011, the guidance counselor contacted the Riverton Police
Department.

Riverton Police Officer, Andrew Landgrebe, responded to the
guidance counselor's report.  He was advised that other students had
expressed concern about Plaintiff's suicidal behavior the previous
evening.  However, Plaintiff's father told Officer Landgrebe that Plaintiff
was fine and that there was no need for concern.

At approximately 8:59 a.m. Officer Landgrebe contacted Sangamon
County about Plaintiff.  At around 10:17 a.m., Sangamon County
contacted Rochester Police Officer Justin Harris.  Officer Harris
proceeded to D.F.'s house at 4430 Passfield, Rochester, Illinois.

Officer Harris arrived at D.F.'s residence and spoke with Plaintiff.
Plaintiff demonstrated no signs of physical, mental, or emotional distress
at the time.  Officer Harris radioed Sangamon County to advise that no
emergency medical services were required.

Next, Officer Harris told Plaintiff that she needed to leave D.F.'s

house and wait outside until Sangamon County arrived to pick her up. Plaintiff questioned why she needed to go outside.  Officer Harris responded by saying, "if you want to ask questions I can just handcuff you and take you out myself."  See d/e 1 at ¶ 27.  After Officer Harris' response, Plaintiff felt she had no choice but to go outside with Officer Harris.

Once outside, Plaintiff and her friends continued to ask why Plaintiff needed to wait outside.  Officer Harris only told Plaintiff that she could not leave.  During this exchange between Officer Harris and Plaintiff, Officer Harris never witnessed any behavior nor obtained any information to suggest Plaintiff required detention or hospitalization.

At 10:26 a.m. a Sangamon County dispatcher contacted Plaintiff's father and told him that he could pick Plaintiff up at 4430 Passfield, Rochester, Illinois.  Plaintiff's father went to the address and arrived at about 10:54 a.m.  Sangamon County Deputy Derek Guernsey also arrived around this time.  Officer Harris left the Rochester, Illinois home at 10:56 a.m.

Deputy Guernsey told Plaintiff she needed to get in his police car. Plaintiff's father said he could take Plaintiff because she was fine. However, Deputy Guernsey told Plaintiff she had to go with him and that Plaintiff's father could follow.  At 11:05 a.m. Deputy Guernsey, followed by Plaintiff's father, took Plaintiff to St. John's Hospital, Springfield, Illinois.  Deputy Guernsey took Plaintiff to the hospital even though Deputy Guernsey never personally saw behavior suggesting Plaintiff was a danger to herself or others or in need of hospitalization. Further, Deputy Guernsey never asked Plaintiff or her friends about Plaintiff's emotional well-being.

Plaintiff and Deputy Guernsey arrived at St. John's Hospital at about 11:22 a.m.  Only one minute earlier, Sangamon County Deputy Troy Sweeney had also arrived at the Hospital.  Plaintiff states that Deputies Sweeney and Guernsey maintained custody of Plaintiff until about 11:58 a.m. when hospital staff admitted Plaintiff.  Between 11:21 a.m. and 11:58 a.m., Deputy Sweeney observed no action or behavior by Plaintiff that suggested she needed hospitalization.

Page 6 of 21

Additionally, while Deputies Sweeney and Guernsey held Plaintiff prior to her being admitted, Deputy Guernsey signed a document for an emergency inpatient admission permitted under 405 ILCS 5/3-600. This statutory provision, however, only applies to the admission of individuals eighteen years and older.

Plaintiff alleges that Deputy Guernsey made three knowingly false statements in the petition for involuntary judicial admission including that:

> [Plaintiff] was a person who, unless she was treated on an inpatient basis was likely to cause physical injury to herself or to another person;
>
> [Plaintiff] was in need of immediate hospitalization; and
>
> That a physician had been consulted and that [Guernsey] was attaching a copy of the physician's medical examination demonstrating that [Plaintiff] was in need of immediate hospitalization.

See d/e 1 at ¶ 51.

Plaintiff further alleges that Deputy Guernsey had received no information that indicated Plaintiff required hospitalization and no physician had found Plaintiff required hospitalization. Therefore,

Page 7 of 21

Plaintiff alleges Deputy Guernsey had no basis for completing and submitting the petition.

According to Plaintiff, because of Officer Harris and Deputies Guernsey and Sweeney, Plaintiff was admitted to a mental health institution without reason.  Plaintiff asserts that this was against her and her parents' wishes and violated her Fourth Amendment rights.

Finally, Plaintiff states that the Illinois Mental Health and Developmental Disabilities Code governs emergency admission of adults and youth.  Plaintiff contends that the Rochester Police Department and Sangamon County have an obligation to teach law enforcement personnel their obligations and citizens' rights pursuant to the Code.

## II.   <u>PROCEDURAL BACKGROUND</u>

Plaintiff filed her Complaint pursuant to 42 U.S.C. § 1983 on July 30, 2012.  <u>See</u> d/e 1.  Count I alleges that Rochester Police Officer Justin Harris violated Plaintiff's Fourth Amendment rights by detaining Plaintiff without probable cause.  Plaintiff also alleges the same Fourth Amendment claims against Deputy Derek L. Guernsey (Counts II) and

Deputy Troy M. Sweeney (Count III).  Count IV alleges that Deputy
Guernsey violated Plaintiff's due process rights.  Counts V and VI allege
that Sangamon County and the Rochester Police Department failed to
properly train their law enforcement officers on the proper methods for
taking custody of individuals under the Illinois Mental Health and
Developmental Disabilities Code.  Plaintiff further states, that had the
officers been trained, Plaintiff would never have been unlawfully
detained.

On August 27, 2012, Deputy Guernsey, Deputy Sweeney, and
Sangamon County filed a Motion to Dismiss Plaintiff's Complaint.  See
d/e 13.  On September 11, 2012, Officer Harris and the Rochester Police
Department also filed a Motion to Dismiss Plaintiff's Complaint.  See d/e
15.  Officer Harris and the Rochester Police Department adopted the
arguments in the Memorandum filed by Deputy Guernsey, Deputy
Sweeney, and Sangamon County.  See d/e 16 at 1.

On September 28, 2012, Plaintiff submitted her Consolidated
Response in Opposition to the Defendants' Motions.  See d/e 18.  In the

Response, Plaintiff agrees to dismissal of her due process claim against Deputy Guernsey (Count IV), but Plaintiff argues that she has stated claims in Counts I, II, III, V, and VI of her Complaint. <u>See</u> d/e 18. Defendants' Motions to Dismiss Plaintiff's Complaint are now before the Court for review.

### III.    <u>JURISDICTION AND VENUE</u>

Plaintiff pursues a claim under 42 U.S.C. § 1983. Federal courts have subject matter jurisdiction over cases brought under federal statute. <u>See</u> 28 U.S.C. § 1331.

Further, the actions giving rise to Plaintiff's Complaint occurred in Sangamon County, Illinois. Therefore, venue is also proper in the Central District of Illinois, Springfield Division. <u>See</u> 28 U.S.C. § 1391(b).

### IV.    <u>LEGAL STANDARD</u>

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. <u>Christensen v. Cnty. of Boone</u>, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's

complaint need only provide a short and plain statement of the claim

showing that the pleader is entitled to relief, sufficient to provide the

defendant with fair notice of the claim and its basis." Tamayo, 526 F.3d

at 1081.  When considering a motion to dismiss under Rule 12(b)(6),

the court construes the complaint in the light most favorable to the

plaintiff; all well-pleaded factual allegations are accepted as true; and all

reasonable inferences are construed in the plaintiff's favor.  Id.  However,

a complaint must allege "enough facts to state a claim to relief that is

plausible on its face" to survive a motion to dismiss.  Bell Atlantic Corp.

v. Twombly, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929

(2007).  For a claim to have facial plausibility, a plaintiff must plead

"factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  Ashcroft v.

Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

"[T]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice."  Id.  Further, factual

allegations required to state a plausible claim for relief depend on the

complexity of the legal theory alleged.  <u>Limestone Dev. Corp. v. Vill. of</u>
<u>Lemont</u>, 520 F.3d 797, 803 (7th Cir. 2008).

## V.   <u>ANALYSIS</u>

Defendants argue in the Motions to Dismiss that the Fourth
Amendment claims against Officer Harris (Count I), Deputy Guernsey
(Count II), and Deputy Sweeney (Count III) should be dismissed
because Plaintiff's allegations demonstrate that the Officer and Deputies
acted reasonably when they seized Plaintiff.  <u>See</u> d/e 14 at 3-8; d/e 16 at
2-4.  Officer Harris and Deputies Guernsey and Sweeney also argue that
they are entitled to qualified immunity.  <u>See</u> d/e 14 at 10; d/e 16 at 1.
However, the qualified immunity argument is undeveloped and need not
be addressed.  Finally, Defendants contend that Plaintiff has failed to
allege claims against Sangamon County (Count V) or the Rochester
Police Department (Count VI) for failure to train because Plaintiff has
not pleaded that Sangamon County or the Rochester Police Department
were deliberately indifferent to a need to train employees in order to
avoid constitutional violations.  <u>See</u> d/e 14 at 11-13; d/e 16 at 4.

A.    **Plaintiff Has Not Pleaded Factual Content to Allow a Plausible Inference that Officer Harris, Deputy Guernsey, or Deputy Sweeney Unreasonably Seized Plaintiff**

Plaintiff alleges first that Officer Harris (Count I), Deputy Guernsey (Count II), and Deputy Sweeney (Count III) unreasonably seized Plaintiff in violation of Plaintiff's Fourth Amendment rights. For Plaintiff to state a claim for relief under the Fourth Amendment, she must allege that she was seized and that the seizure was unreasonable. Brokaw v. Mercer County, 235 F.3d 1000, 1010 (7th Cir. 2000) (citing Donovan v. City of Milwaukee, 17 F.3d 944, 948 (7th Cir. 1994)). For the purposes of the instant Motions, Plaintiff is presumed to have adequately alleged that Officer Harris and Deputies Guernsey and Sweeney seized her.

To support her argument that her seizure was unreasonable, Plaintiff alleges that Officer Harris and Deputies Guernsey and Sweeney never witnessed any actions by Plaintiff that would warrant taking her to the hospital for a mental health evaluation. See d/e 18 at 18. Plaintiff also argues that she has not alleged Riverton Police Officer Landgrebe

Page 13 of 21

told Sangamon County Dispatch that Plaintiff had made suicidal threats. See d/e 18 at 10.  This, Plaintiff contends, further supports her claims that Officer Harris and Deputies Guernsey and Sweeney seized Plaintiff without reason.  Plaintiff also asserts that because she has not pleaded that Officer Landgrebe told Sangamon County Dispatch about Plaintiff's alleged suicide threats, that all reasonable inferences regarding what Officer Landgrebe actually reported must be construed in her favor.  See d/e 18 at 10.

Plaintiff is correct that all reasonable inferences must be construed in her favor at this stage of the litigation.  See Twombly, 550 U.S. 544, 547.  However, Plaintiff has not supplied factual content to allow a plausible inference that Officer Harris, Deputy Guernsey, or Deputy Sweeney seized Plaintiff unreasonably.  See Iqbal, 129 S.Ct. at 1949.

Specifically, Plaintiff has alleged that neither Officer Harris nor Deputies Guernsey or Sweeney ever received information that Plaintiff had threatened to kill herself.  Plaintiff has also alleged that Deputy Guernsey made knowingly false statements in the petition to admit

Plaintiff at St. John's Hospital including that:

> [Plaintiff] was a person who, unless she was treated on an
> inpatient basis was likely to cause physical injury to herself or
> to another person;
>
> [Plaintiff] was in need of immediate hospitalization; and
>
> That a physician had been consulted and that [Guernsey] was
> attaching a copy of the physician's medical examination
> demonstrating that [Plaintiff] was in need of immediate
> hospitalization.

See d/e 1 at ¶ 51.

However, Plaintiff's conclusion that Officer Harris and Deputies
Guernsey and Sweeney were not told of Plaintiff's purported attempts to
kill herself contradicts her own allegations.  Plaintiff alleges a chain of
events that starts with reports to the Riverton High School Guidance
counselor and ends with what appears to be the officers' reactions to
those reports that consisted of detaining Plaintiff and taking her to the
hospital for a professional evaluation.  Based on the chain of events
alleged, the Court cannot plausibly infer that Officer Harris and Deputies
Guernsey and Sweeney received no information that Plaintiff had
threatened to kill herself.   The chain of events alleged by Plaintiff also

Page 15 of 21

negates a plausible inference that Deputy Guernsey had no reason to fill out the petition, or that Deputy Guernsey made false statements in the petition. The only plausible inference here is that the officers took action in response to information that Plaintiff had threatened to kill herself.

Further, Plaintiff does not attach the petition for admission that Deputy Guernsey completed. By law, the petition requires:

> a detailed statement of the reason for the assertion that the respondent is subject to involuntary admission on an inpatient basis, including the signs and symptoms of a mental illness and a description of any acts, threats, or other behavior or pattern of behavior supporting the assertion and the time and place of their occurrence.

405 ILCS 5/3-601(b).

> The petition must also:

> be accompanied by a certificate executed by a physician, qualified examiner, psychiatrist, or clinical psychologist which states that the respondent is subject to involuntary admission on an inpatient basis and requires immediate hospitalization.

> [if no certificate can be obtained] no person detained for examination . . . on the basis of a petition alone may be held for more than 24 hours unless within that period a certificate is furnished to or by the mental health facility.

405 ILCS 5/3-602, 604. Plaintiff has also failed to attach this certificate

Page 16 of 21

or state why she has not.

Without the factual content that the admission petition or physician's certificate would provide, Plaintiff has not alleged facts to permit a plausible inference that Officer Harris, Deputy Guernsey, or Deputy Sweeney unreasonably seized Plaintiff.  See Iqbal, 129 S.Ct. at 1949.  Additionally, the facts as pleaded, lead to the plausible inference that Officer Harris and Deputies Guernsey and Sweeney reacted to information they had received about suicide threats by Plaintiff.  As a result, Plaintiff has not stated claims under the Fourth Amendment against Officer Harris, Deputy Guernsey, or Deputy Sweeney.  Therefore, Plaintiff's claims against Officer Harris and Deputies Guernsey and Sweeney are dismissed without prejudice and with leave to replead.

**B.     Plaintiff Has Not Alleged that Sangamon County or the Rochester Police Department Had Actual or Constructive Notice that a Failure to Train Would Lead to Constitutional Violations**

Sangamon County and the Rochester Police Department also move to dismiss Plaintiff's claims that Sangamon County (Count V) and the Rochester Police Department (Count VI) failed to properly train their

employees.  First, Defendant Sangamon County notes that it may not be the proper Defendant for a failure to train claim.  See d/e 14 at 11. Sangamon County, however, does not explain why it is not a proper Defendant and the Court will not develop this argument for Sangamon County.

Sangamon County and the Rochester Police Department then assert that a failure to train claim requires a plaintiff to allege that the municipality has demonstrated deliberate indifference to the need for training despite knowing that a failure to train will result in a constitutional deprivation.  See d/e 14 at 11; d/e 16 at 4-5.  Sangamon County and the Rochester Police Department argue that Plaintiff fails to allege deliberate indifference in her Complaint.  See d/e 14 at 11; d/e 16 at 4-5.

In City of Canton, Ohio v. Harris, the Supreme Court held that a municipality's failure to train its employees can form the basis for § 1983 liability if the failure rises to the level of policy or custom.  489 U.S. 378, 388-89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).  A failure to train can

constitute a permanent well-settled custom if "in light of the duties
assigned to specific officers or employees the need for more or different
training is so obvious, and the inadequacy so likely to result in the
violation of constitutional rights, that the policymakers of the city can
reasonably be said to have been deliberately indifferent to the need."  Id.
at 390.

A municipality evinces deliberate indifference to the rights of its
citizens where it fails to train its employees "with respect to a clear
constitutional duty implicated in recurrent situations that a particular
employee is certain to face."  Robles v. City of Fort Wayne, 113 F.3d
732, 735 (7th Cir. 1997) (internal quotation marks omitted).  A
municipality also exhibits deliberate indifference if "after learning of a
pattern of constitutional violations" the municipality fails to train its
employees properly to avoid those constitutional violations.  Id.  Under
either scenario, the finding of deliberate indifference is derived from the
municipal entity's failure to act in the face of actual or constructive
notice that such a failure would likely result in constitutional

deprivations.  Id.

Here, Plaintiff, in a conclusory manner, contends that Sangamon County and the Rochester Police Department had "a duty and an obligation to train [their] law enforcement officers as to the proper methods for taking custody of individuals under the Illinois Mental Health and Developmental Disabilities Code," and that "[h]ad the [Officer and Deputies] been properly trained under the [Code they] would not have taken custody of [Plaintiff]."  See d/e 1 at ¶¶ 79-80, 84-85.

However, Plaintiff has failed to allege that Sangamon County or the Rochester Police Department had actual or constructive notice that a failure to train employees regarding the Illinois Mental Health and Developmental Disabilities Code would result in a constitutional deprivation.  See Robles, 113 F.3d at 735.  Therefore, Plaintiff has not alleged that Sangamon County or the Rochester Police Department were deliberately indifferent in failing to train their employees.  See City of Canton, Ohio, 489 U.S. at 390.  As a result, Plaintiff has failed to state

failure to train claims against Sangamon County (Count V) or the

Rochester Police Department (Count VI) so Counts V and VI are

dismissed without prejudice and with leave to replead.

## VI.  <u>CONCLUSION</u>

Defendants' Motions to Dismiss Plaintiff's Complaint (d/e 13, 15)

are GRANTED without prejudice and with leave for Plaintiff to replead

by May 10, 2013.

IT IS SO ORDERED.

ENTER: April 19, 2013

FOR THE COURT:                              <u>s/ Sue E. Myerscough</u>
                                            SUE E. MYERSCOUGH
                                            UNITED STATES DISTRICT JUDGE