## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| FALYN BRUCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 12-3198 |
| | ) | |
| DEREK L. GUERNSEY, TROY M. | ) | |
| SWEENEY, JUSTIN HARRIS, | ) | |
| SANGAMON COUNTY, ILLINOIS, | ) | |
| and ROCHESTER POLICE | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter is before the Court on Defendants Deputy Derek L.

Guernsey's, Deputy Troy M. Sweeney's, Officer Justin Harris's,

Sangamon County's, and the Rochester Police Department's Motions to

Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (d/e

21, 24).  Defendants' Motions to Dismiss are GRANTED and Counts I

through V of Plaintiff's Amended Complaint are DISMISSED without

prejudice and with leave to replead.  Plaintiff Falyn Bruce has pleaded

facts that demonstrate Defendant Sweeney did not personally violate

Plaintiff's Fourth Amendment Rights.  Plaintiff has also pleaded facts

that demonstrate Defendants Harris and Guernsey seized Plaintiff under

the reasonable belief that she presented a threat of harm to herself or

others.  Moreover, Defendant Guernsey is entitled to qualified immunity

even if he seized Plaintiff without probable cause to do so.  Because

Plaintiff has alleged facts that demonstrate she cannot state plausible

claims for relief against Defendant's Harris, Guernsey, and Sweeney, her

claims that Defendants Sangamon County and the Rochester Police

Department failed to properly train their officers must also be dismissed.

## I. <u>FACTUAL BACKGROUND</u>

On Monday, September 5, 2011, Plaintiff Falyn Bruce, then age

17, was with her former boyfriend, B.S., a minor, at B.S.'s home in

Riverton, Illinois.  The two began arguing, and Plaintiff tried to leave.  At

first, B.S. physically prevented Plaintiff from leaving.  However, Plaintiff

was eventually able to leave B.S.'s home.  Plaintiff alleges that she

remained calm during this encounter with B.S. and that she made no

threats to harm herself or others while in B.S.'s presence.

After leaving B.S.'s home, Plaintiff contacted a friend, D.F., a minor, who picked Plaintiff up and took Plaintiff to D.F.'s home at 4430 Passfield, Rochester, Illinois, which is 14.5 miles from Riverton, Illinois.[1] The two arrived at D.F.'s home at approximately 11:50 p.m. on Monday, September 5, 2011, and Plaintiff spent the night at D.F.'s home.

At about 8:00 a.m. on Tuesday, September 6, 2011, Plaintiff called her father James Bruce and told him that she was with D.F.  Plaintiff also told her father that she was fine but did not feel like going to school. Plaintiff's father said he understood and that he would contact the school to let them know.

Later that morning, B.S. allegedly told Plaintiff's friends at Riverton High School that Plaintiff had attempted to kill herself the night before by placing a belt around her neck and tightening the belt.  Plaintiff asserts that she did nothing of the sort.  None of Plaintiff's friends were

---

[1] A court may take judicial notice of undisputed facts without converting a motion to dismiss into a motion for summary judgment.  Ennenga v. Starns, 677 F.3d 766, 773-74 (7th Cir. 2012).  According to Google Maps, the city center of Riverton, Illinois is 14.5 miles from D.F.'s residence at 4430 Passfield, Rochester, Illinois.

at B.S.'s the previous evening when Plaintiff allegedly tried to commit suicide.  However, her friends were concerned and voiced that concern to the Riverton High School Guidance Counselor.  At approximately 8:45 a.m., the guidance counselor contacted the Riverton Police Department about the reports that Plaintiff had tried to commit suicide.

Riverton Police Officer Andrew Landgrebe responded to the reports and arrived at Riverton High School that morning.  He was advised that other students had said that Plaintiff had tried to commit suicide the previous evening.  Meanwhile, Plaintiff's father, Mr. Bruce, went to the school.  When Mr. Bruce arrived, Mr. Bruce told Officer Landgrebe that Mr. Bruce knew where Plaintiff was, that Plaintiff was fine, and that there was no need for concern.  Despite Mr. Bruce's assurances, Officer Landgrebe contacted Sangamon County Dispatch at 8:59 a.m. and told the dispatcher that Plaintiff was "possibly" suicidal and suggested she should be checked.

At 10:17 a.m., Sangamon County Dispatch contacted Defendant Harris of the Rochester Police Department and told Defendant Harris

Plaintiff's location and that Plaintiff was possibly suicidal.  In response to

this call, Defendant Harris proceeded to D.F.'s home at 4430 Passfield,

Rochester, Illinois.  When Defendant Harris arrived, he knocked on the

door and eventually spoke with Plaintiff.  At this point, Defendant Harris

radioed Sangamon County to advise that no emergency medical services

were required.

Afterward, Defendant Harris entered D.F.'s home and instructed

Plaintiff to wait outside for a Sangamon County official.  Plaintiff asserts

that she asked Defendant Harris why she needed to go outside.

Defendant Harris allegedly told Plaintiff that if she wanted to ask

questions he could just handcuff Plaintiff and take her outside himself.

Plaintiff asserts that she felt she had no choice but to go outside

with Defendant Harris where he made Plaintiff wait in the driveway of

D.F.'s home.  While in the driveway, Plaintiff alleges that she and her

friends repeatedly questioned Defendant Harris's reasons for making

Plaintiff wait outside.  Additionally, Plaintiff asserts that during the

exchange between Defendant Harris and Plaintiff, Defendant Harris

neither witnessed behavior nor obtained any information that indicated Plaintiff was a threat to herself or others.

Plaintiff alleges that at 10:26 a.m., a Sangamon County dispatcher contacted Plaintiff's father, Mr. Bruce, and told him that his daughter was fine. The dispatcher also told Mr. Bruce that he could pick Plaintiff up at 4430 Passfield, Rochester, Illinois. Plaintiff's father proceeded to the address and arrived at 10:54 a.m. Defendant Guernsey of the Sangamon County Sheriff's Department also arrived at D.F.'s home at about this time. Defendant Harris left D.F.'s home at 10:56 a.m. after having been there for approximately thirty-nine minutes.

Upon arriving, Defendant Guernsey told Plaintiff that she needed to get into his police car. Plaintiff asserts that both she and her father told Defendant Guernsey that Plaintiff was fine and that she would leave with her father. However, according to Plaintiff, Defendant Guernsey told Plaintiff and her father that Plaintiff had to go with him and that Defendant Guernsey intended to take Plaintiff to St. John's Hospital in Springfield, Illinois.

When Defendant Guernsey took Plaintiff to the hospital, Defendant Guernsey had information that Plaintiff might need medical attention and that Plaintiff was possibly suicidal.  However, Plaintiff asserts that Defendant Guernsey had already received information from Sangamon County Dispatch that Plaintiff was okay.  Furthermore, Plaintiff asserts that Defendant Guernsey did not personally observe any action or behavior by Plaintiff indicating she presented a danger to herself or others and that Defendant Guernsey did not ask Plaintiff whether she needed medical attention.  At 11:05 a.m., Defendant Guernsey left Rochester, Illinois with Plaintiff in the police car and drove to St. John's Hospital in Springfield, Illinois.

Plaintiff and Defendant Guernsey arrived at St. John's Hospital at 11:22 a.m.  Only one minute earlier, Defendant Troy Sweeney of the Sangamon County's Sheriff's Department had also arrived at the Hospital.  Plaintiff alleges that Defendants Sweeney and Guernsey maintained custody of Plaintiff until 11:58 a.m. when hospital staff admitted Plaintiff to the hospital.  Plaintiff further alleges that between

11:21 a.m. and 11:58 a.m., Defendant Sweeney observed no action or

behavior by Plaintiff indicating Plaintiff was a threat to herself or others.

    While at the Hospital, Defendant Guernsey signed a document for

an emergency inpatient admission pursuant to 405 ILCS 5/3-600.  This

provision of the Illinois Mental Health and Developmental Disabilities

Code applies to the emergency admission of individuals eighteen years

and older.  In the petition, Defendant Guernsey checked boxes regarding

his knowledge of and the purported basis for Plaintiff's need for medical

care and that he had attached a certificate of examination by a physician:

> Falyn W. Bruce is: a person with mental illness who because
> of his or her illness is reasonably expected, unless treated on
> an inpatient basis, to engage in conduct placing such person
> or another in physical harm or in reasonable expectation of
> being physically harmed;
>
>                 ****
>
> [Falyn W. Bruce is] in need of immediate hospitalization;
>
>                 ****
>
> One Certificate of Examination is attached.

Amended Compl., d/e 20 Ex. 1 at 2-3.  Defendant Guernsey also wrote

Page 8 of 28

that Plaintiff had threatened suicide and that she told Deputy Guernsey

that she had been thinking of suicide:

> Falyn told neighbor she wanted to die, punched herself in the
> face, and tried to kill herself by placing a belt around her neck
> and tightening it.  Falyn told Deputy Guernsey that she has
> been thinking of suicide.

Amended Compl., d/e 20, Ex. 1 at 2.

Plaintiff asserts that she did not suffer from a mental illness and

asserts that Defendant Guernsey had no basis for making this assertion.

Plaintiff also asserts that Defendant Guernsey had no basis for believing

Plaintiff presented a threat to herself or others because of a mental

illness.  Lastly, Plaintiff asserts that she never told Defendant Guernsey

that she had contemplated suicide.

Furthermore, Plaintiff alleges that Defendant Guernsey did not

attach a certificate of examination to the petition because no physician

had performed an examination before Defendant Guernsey completed

the petition.  In fact, Plaintiff alleges, Defendant Guernsey never spoke

with a medical professional who saw Plaintiff at St. John's Hospital.  The

first professional who saw Plaintiff, Dr. Nate S. Blaustein, concluded at

11:53 a.m. that Plaintiff was in good condition and ready for discharge. After Dr. Blaustein saw Plaintiff, a psychologist completed a report that indicated Plaintiff had neither suicidal nor homicidal ideations.

Despite the alleged approval for discharge, Plaintiff was admitted to a mental health institution. Plaintiff alleges that Defendants Guernsey's, Sweeney's, and Harris's actions resulted in her wrongful institutionalization. Plaintiff also alleges that Defendants Sangamon County's and the Rochester Police Department's failure to instruct their law enforcement officers on the officers' obligations under the Illinois Mental Health and Developmental Disabilities Code led to Plaintiff's inappropriate hospitalization.

## II.  PROCEDURAL BACKGROUND

Plaintiff filed her Amended Complaint on May 10, 2013 and brings this action pursuant to 42 U.S.C. § 1983. In Count I of the Amended Complaint, Plaintiff alleges that Rochester Police Officer Justin Harris violated Plaintiff's Fourth Amendment rights by seizing Plaintiff without probable cause to believe that Plaintiff presented a threat to

herself or others.  Plaintiff also alleges the same Fourth Amendment
claims against Deputy Derek L. Guernsey (Count II) and Deputy Troy
M. Sweeney (Count III) of the Sangamon County Sheriff's Department.
Counts IV and V allege that Defendants Sangamon County and the
Rochester Police Department failed to train their law enforcement
officers on the proper method for taking custody of individuals under the
Illinois Mental Health and Developmental Disabilities Code.  Plaintiff
asserts that this failure to train resulted in her unlawful seizure.

On May 24, 2013, Defendants Guernsey, Sweeney, and Sangamon
County filed a Motion to Dismiss Counts II, III, and IV of Plaintiff's
Amended Complaint.  Motion to Dismiss, d/e 21.  On May 31, 2013,
Defendants Harris and the Rochester Police Department filed a Motion
to Dismiss Counts I and V of the Amended Complaint.  Motion to
Dismiss, d/e 24.

On June 17, 2013, Plaintiff submitted her Memorandum in
Opposition to Defendants' Motions.  See d/e 18.  In the Memorandum,
Plaintiff argues that she has pleaded plausible claims of Fourth

Amendment violations by Defendants Harris, Guernsey, and Sweeney in Counts I through III.  Plaintiff also argues that she has pleaded facts regarding Counts IV and V that permit a reasonable inference that Defendants Sangamon County and the Rochester Police Department are liable for those entities' failure to train their officers on the proper method for taking custody of individuals under the Illinois Mental Health and Developmental Disabilities Code.

## III.   JURISDICTION AND VENUE

Plaintiff pursues her claims against Defendants pursuant to 42 U.S.C. § 1983.  Federal district courts have subject-matter jurisdiction over federal civil rights actions brought pursuant to § 1983.  See 28 U.S.C. § 1331.  Furthermore, venue is proper in this Court because the actions giving rise to the claims in Plaintiff's Amended Complaint occurred in Sangamon County, Illinois.  See 28 U.S.C. § 1391(b).

## IV.   LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint.  Christensen v. Cnty. of Boone, 483 F.3d 454, 458 (7th Cir.

2007).  To state a claim for relief, a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief and giving the defendant fair notice of the claims. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).  When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff accepting all well-pleaded allegations as true and construing all reasonable inferences in the plaintiff's favor.  Id.  However, the complaint must set forth facts that plausibly demonstrate a claim for relief.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007).  Plausibility means alleging factual content that allows a court to reasonably infer that the defendant is liable for the misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient.  Id.

## V.  ANALYSIS

Defendants Harris, Guernsey, and Sweeney argue in their Motions to Dismiss that the Fourth Amendment claims against them should be

dismissed for Plaintiff's failure to state plausible claims for relief.

Defendants Sweeney and Guernsey also argue that they are entitled to

qualified immunity.  Furthermore, Defendants Sangamon County and

the Rochester Police Department contend that Plaintiff has not alleged

facts that permit a reasonable inference that these Defendants were

deliberately indifferent to a need to train their officers.

A.     **Plaintiff Has Alleged Facts that Demonstrate Deputy Sweeney Was Not Personally Involved in Plaintiff's Seizure Which Means Defendant Sweeney Cannot Be Liable Under § 1983**

Defendant Sweeney argues that Plaintiff has alleged facts that

demonstrate Defendant Sweeney was not personally involved in

Plaintiff's seizure.  Defendant Sweeney asserts that Plaintiff must allege

Defendant Sweeney had some personal involvement in the allegedly

unlawful seizure to state a plausible claim for relief under § 1983.

To recover under § 1983, a plaintiff must establish a defendant's

direct personal responsibility for the claimed deprivation of a

constitutional right.  <u>Duncan v. Duckworth</u>, 644 F.2d 653, 655 (7th Cir.

1981).  In the Seventh Circuit, allegations that an officer acted as a

temporary custodian of a plaintiff who claims improper seizure is insufficient for finding that officer liable under § 1983.  See Morfin v. City of East Chicago, 349 F.3d 989, 1000-01 (7th Cir. 2003) (finding no personal involvement in the plaintiff's arrest where the officer transported the plaintiff from a barbershop to the police department for booking); see also Maltby v. Winston, 36 F.3d 548, 559 (7th Cir. 1994) (holding that sheriff who transported and otherwise acted as custodian of arrestee could not be liable for alleged constitutional violation of arrest without probable cause).

In the Amended Complaint, Plaintiff alleges that Defendant Sweeney arrived at St. John's Hospital at 11:21 a.m., just one minute before Plaintiff and Defendant Guernsey arrived at the Hospital.  Beyond this allegation, Plaintiff does not allege how Defendant Sweeney was personally involved in Plaintiff's seizure, where Defendant Sweeney was while Plaintiff awaited a mental health evaluation, or what Defendant Sweeney did or did not do while at St. John's Hospital.  Defendant only alleges that Defendants Guernsey and Sweeney had custody of Plaintiff

until she was admitted at 11:58 a.m.

The allegations in Plaintiff's Amended Complaint do not show that Defendant Sweeney had any personal involvement in Plaintiff's seizure that would render Defendant Sweeney liable under § 1983.  Instead, Defendant Sweeney, at most, acted in concert with Defendant Guernsey as a temporary custodian.  Allegations that Defendant Sweeney acted as a temporary custodian are insufficient to state a plausible claim for relief against Defendant Sweeney under § 1983.

**B.  Plaintiff Has Alleged Facts that Demonstrate Defendants Harris and Guernsey Had Objectively Reasonable Grounds to Believe that Plaintiff Presented a Threat to Herself or Others**

Defendants Harris and Guernsey also argue that the allegations in the Amended Complaint fail to establish a plausible claim for relief against them under § 1983.  Specifically, Defendant Harris argues that, even if he seized Plaintiff, the allegations in the Amended Complaint demonstrate that Defendant Harris acted in an objectively reasonable manner based on the information he had received regarding Plaintiff's possible suicidal ideations.  Defendant Guernsey also contends that the

allegations in the Amended Complaint demonstrate that he acted in an
objectively reasonable manner by seizing Plaintiff and taking her to St.
John's Hospital for a mental health evaluation after receiving information
that Plaintiff was possibly suicidal.

A seizure made to effectuate an involuntary hospitalization is
analyzed under the Fourth Amendment's probable cause standard.
Fitzgerald v. Santoro, 707 F.3d 725, 732-33 (7th Cir. 2013) (finding
that the officers had probable cause as matter of law to seize the plaintiff
to effectuate an involuntary mental health commitment where the
plaintiff had called a local police station and made suicidal statements,
appeared unsteady on her feet and possibly intoxicated, and told officers
she was taking anti-depressants and was going through a difficult period).
Probable cause exists if the officer has reasonable grounds to believe that
the individual may be seized under the governing legal standard.  Id.
Peace officers may seize a minor and transport the minor to a mental
health facility when the peace officer reasonably believes that the minor
requires immediate medical attention:

> A peace officer may take a minor into custody and transport the minor to a mental health facility when, as a result of his personal observation, the peace officer has reasonable grounds to believe that the minor is eligible for admission under Section 3-503 and is in a condition that immediate hospitalization is necessary in order to protect the minor or others from physical harm.

405 ILCS 5/3-504(b).

The probable cause inquiry focuses on the facts and circumstances known to the police officer at the time of the seizure and may be determined based on facts alleged in a complaint.  See, e.g., Averhart v. City of Chicago, 114 Fed. Appx. 246, 248 (7th Cir. 2004); Chathas v. Smith, 884 F.2d 980, 987 (7th Cir. 1989).  Accordingly, the question here is whether Plaintiff's allegations demonstrate that Defendants Harris and Guernsey lacked reasonable grounds for believing Plaintiff required immediate hospitalization to protect Plaintiff or others from harm.

1.     **The Allegations in the Amended Complaint Demonstrate that Officer Harris Had Objectively Reasonable Grounds to Seize Plaintiff Before Defendant Guernsey Arrived and Transported Plaintiff to the Hospital**

In the Amended Complaint, Plaintiff states that Defendant Harris received a phone call from Sangamon County Dispatch at 10:17 a.m. on

September 6, 2011.  In the phone call, Dispatch informed Defendant

Harris that Plaintiff was possibly suicidal.  Defendant Harris proceeded

to D.F.'s home in Rochester, Illinois knowing that Plaintiff was possibly

suicidal and that she was absent from school that day.  Based on these

facts in Plaintiff's Amended Complaint, Defendant Harris had reasonable

grounds to remain with Plaintiff in D.F.'s driveway for a total of thirty-

nine minutes until Defendant Guernsey arrived at D.F.'s home.

### 2. Plaintiff's Allegations Demonstrate that Defendant Guernsey Had Objectively Reasonable Grounds to Believe that Plaintiff Presented a Threat to Herself or Others

The allegations in Plaintiff's Amended Complaint also show that

Defendant Guernsey proceeded to D.F.'s residence knowing that Plaintiff

was not in school on a Tuesday morning, that she had spent the night in

a home approximately fourteen miles away from Plaintiff's hometown of

Riverton, Illinois, and that Plaintiff was possibly suicidal.  Based on this

information, Defendant Guernsey took Plaintiff to St. John's Hospital for

a professional evaluation of Plaintiff's mental health.

Plaintiff argues that Defendant Guernsey acted without probable

cause to bring Plaintiff to St. John's Hospital because Defendant Guernsey only had information from Sangamon County Dispatch that Plaintiff was possibly suicidal.  The report that Plaintiff was possibly suicidal was started by Plaintiff's former boyfriend, conveyed to the Riverton High School Guidance Counselor, reported to Riverton Police Officer Landgrebe, and finally passed on to Sangamon County Dispatch. Plaintiff argues that this chain of reports hardly forms a reliable basis for seizing Plaintiff and taking her to St. John's Hospital.

Plaintiff also argues that Plaintiff's father met Defendant Guernsey at D.F.'s home, and, along with Plaintiff, told Defendant Guernsey that Plaintiff did not need a mental health evaluation.  Plaintiff contends that, at that point, Defendant Guernsey knew that Plaintiff did not present a threat to herself or others.

However, had Plaintiff actually been suicidal, not taking her to St. John's Hospital could have created a risk to Plaintiff's life.  In Bloom v. Palos Heights, officers were faced with similar circumstances after a boy's mother reported to authorities that the boy's minor girlfriend was

contemplating suicide and had a knife to her throat.  <u>Bloom v. Palos Heights Police Dept.</u>, 840 F. Supp. 2d 1059, 1068 (N.D. Ill. 2012). After receiving the report, officers arrived, seized Plaintiff, and took her to the hospital for a mental health evaluation.  <u>Id.</u> at 1063-64.

The girl's mother filed suit against the officers alleging, among other claims, a Fourth Amendment violation by the officers for seizing the girl without probable cause.  <u>Id.</u> at 1068.  The complaint alleged that the officers lacked probable cause because the reports regarding the girl's threat of suicide were false, Plaintiff was not in distress when the officers arrived, and the girl told the officers that she had not contemplated suicide.  <u>Id.</u>

The Northern District of Illinois rejected these arguments and dismissed the plaintiff's claim.  The court explained that the officers acted properly under the circumstances by turning to professionals for an accurate evaluation of plaintiff's mental state.  <u>Id.</u>  The court reasoned that failing to take any action after reports that the girl was suicidal may have presented a threat to the girl's life.  <u>Id.</u> at 1069.

Like the officers in <u>Bloom</u>, Defendant Guernsey acted reasonably by relying on professional opinions rather than his own when he seized Plaintiff and took her to St. John's Hospital based on a report that Plaintiff was possibly suicidal.  Furthermore, while Plaintiff and her father told Defendant Guernsey that Plaintiff was fine, the facts alleged demonstrate that Defendant Guernsey knew that Plaintiff had not been in her father's care since at least the previous evening.  In fact, Plaintiff had stayed in a different town with another minor.  Based on these facts, Defendant Guernsey had probable cause to believe Plaintiff presented a threat to herself or others and properly submitted any question of Plaintiff's mental health status to professionals.

### 3.    Plaintiff's Allegations Demonstrate that Defendant Guernsey Had Arguable Probable Cause to Believe that Plaintiff Presented a Threat to Herself or Others

Defendant Guernsey also argues that, even if he lacked probable cause, he is still entitled to qualified immunity.

Defendant Guernsey is entitled to qualified immunity if he could have mistakenly believed that probable cause existed.  This is often

referred to as arguable probable cause.  <u>Humphrey v. Staszak</u>, 148 F.3d 719, 725 (7th Cir. 1998).  Arguable probable cause exists when a reasonable police officer in the same circumstance and with the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law.  <u>Id.</u>; <u>see</u> <u>also</u> <u>Sherman v. Four Cnty. Counseling Ctr.</u>, 987 F.2d 397, 402 (7th Cir. 1993) (explaining that qualified immunity accommodates reasonable errors because police officers should not always err on the side of caution for fear of being sued).

Here, the inquiry is whether a police officer, knowing what Defendant Guernsey knew, could have reasonably believed that Plaintiff presented a threat to herself or others.  The facts alleged in Plaintiff's Amended Complaint demonstrate that Defendant Guernsey had probable cause to believe that Plaintiff presented a threat to herself or others.  These same allegations also entitle Defendant Guernsey to qualified immunity.

C.   **Plaintiff Has Not Alleged that Sangamon County and the Rochester Police Department Were Deliberately Indifferent to a Need to Train Their Officers**

Since Plaintiff has not stated claims for relief against Defendants Harris, Guernsey, and Sweeney, Plaintiff's claims against Defendants Sangamon County and the Rochester Police Department for failure to train must also be dismissed.  See <u>Jenkins v. Bartlett</u>, 487 F.3d 482, 492 (7th Cir. 2007) ("Although a municipality may be directly liable for constitutional violations by its officers when the municipality evinces a deliberate indifference to the rights of the plaintiff by failing to train adequately its officers to prevent the violation, there can be no liability [against a municipality] for failure to train when there has been no violation of the plaintiff's constitutional rights.").  Moreover, even if Plaintiff had stated plausible claims for relief against Defendants Harris, Guernsey, and Sweeney, Plaintiff has not alleged facts that permit a reasonable inference that Defendants Sangamon County and the Rochester Police Department were deliberately indifferent to a need to train their officers on the proper method for taking custody of individuals

under the Illinois Mental Health and Developmental Disabilities Code.

To state a claim for relief under § 1983 based on a municipal defendant's failure to train its employees, a plaintiff must allege that a municipality's failure to train its officers amounts to deliberate indifference.  See, e.g., Suber v. City of Chicago, 2011 WL 1706156, at *4 (N.D. Ill. 2011) (finding that the plaintiff had failed to state a claim for relief where the facts in the complaint included one alleged episode of injury and no allegations of deliberate indifference by the municipality).  Deliberate indifference exists in either of two circumstances.  Jenkins v. Bartlett, 487 F.3d at 492.  One involves the municipality failing to train when, in light of the duties assumed by specific employees of the municipality, the need for more or different training is so obvious that the inadequate training is likely to result in a violation of constitutional rights.  Id.  A municipality also evinces deliberate indifference where a repeated pattern of constitutional violations makes the need for further training evident to city policymakers.  Id.

Here, Plaintiff alleges that Defendants Sangamon County and the

Rochester Police Department should have known that their failure to properly train Defendants Harris, Guernsey, and Sweeney would result in a violation of Plaintiff's constitutional rights. Furthermore, Plaintiff argues in her Memorandum in Opposition to the Motions to Dismiss that nothing in the Amended Complaint establishes that the lack of training was not deliberate or not a conscious choice by the municipalities to not train their officers on proper seizure protocol under the Fourth Amendment and the Illinois Mental Health and Developmental Disabilities Code. Plaintiff then asserts that the case is at the pleading stage and more detailed facts will be developed in discovery.

However, Plaintiff's assertion that discovery may reveal evidence pertinent to her failure to train claims against Defendants Sangamon County and the Rochester Police Department demonstrates that she has not pleaded facts that establish these Defendants were deliberately indifferent to a need to train their officers. See Strauss v. City of Chicago, 760 F.2d 765, 767-68 (7th Cir. 1985) (cautioning that "plaintiffs could file claims whenever a police officer abused them, add

boilerplate allegations [against the municipality], and proceed to

discovery in the hope of turning up some evidence to support the 'claims'

made" if the court did not require some facts showing deliberate

indifference by the municipality).  Instead, Plaintiff's allegations in

Counts IV and V are merely boilerplate recitations of the elements of a

failure to train cause of action.  Absent allegations giving rise to a

reasonable inference that deliberate indifference exists, these claims are

mere attempts to hold Defendants Sangamon County and the Rochester

Police Department vicariously liable for the alleged wrongful acts of their

officers.  Such claims are not viable under § 1983 and must be dismissed.

See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978) ("[A]

municipality cannot be held liable under § 1983 on a respondeat superior

theory.").

## VI.   CONCLUSION

Defendants' Motions to Dismiss Counts I through V of Plaintiff's

Amended Complaint (d/e 21, 24) are GRANTED and Counts I through

V of Plaintiff's Amended Complaint are DISMISSED without prejudice

and with leave to replead.  Plaintiff shall file her second amended

complaint on or before January 14, 2014.

IT IS SO ORDERED.

ENTER: January 2, 2013

FOR THE COURT:                    s/ Sue E. Myerscough
                                  SUE E. MYERSCOUGH
                                  UNITED STATES DISTRICT JUDGE